# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIANCA BUCANO,<br><br>  Plaintiff<br><br>v.<br><br>MONROE COUNTY CORRECTIONAL FACILITY, et al.,<br><br>  Defendants | CIVIL ACTION NO. 3:13-CV-01782<br><br>(CONABOY, J.)<br><br>(MEHALCHICK, M.J.) |

## REPORT AND RECOMMENDATION

Plaintiff Bianca Bucano, proceeding *pro se*, is currently incarcerated at State Correctional Institution-Muncy in Muncy, Pennsylvania. At all relevant times to this action, Bucano was housed in the Monroe County Correctional Facility in Stroudsburg, Pennsylvania. On June 26, 2013, pursuant to this Court's directive by Order dated June 6, 2013 (*see* Case No. 12-CV-606, Doc. 52), Bianca Bucano filed the current civil rights action under 42 U.S.C. § 1983. In the present action, Bucano names as defendants Monroe County Correctional Facility, Corrections Officer Viola, Ms. Best, Sergeant Kramer, Sergeant Diliberto, Warden Donna Asure, and Corrections Officer Jackson. Pending before the Court is Defendants' motion to dismiss[1] (Doc. 17), and Plaintiff's motion to amend/correct. (Doc. 21).

---

[1] All defendants except Ms. Best join in the pending motion to dismiss. Although Defendant Best has not moved to dismiss claims against her, the Court will address them pursuant to its authority under 28 U.S.C. § 1915(e)(2)(B)(ii) (the court has authority to "dismiss the case at any time if the court determines that ... the action ... fails to state a claim on which relief may be granted").

I. **PROCEDURAL HISTORY**

On August 1, 2012, Plaintiff Bianca Bucano and her daughter, Melissa Bucano, filed, *pro se*, a joint complaint docketed to Case No. 3:12-CV-1450. They named as defendants Monroe County Correctional Facility, Sergeant Kramer, Warden Asure, Corrections Officer Viola, Prime Care, and Ms. Best. (3:12-CV-1450, Doc. 1). On August 13, 2012, Case No. 3:12-CV-1450 was consolidated into Lead Case 3:12-CV-606 by Order of this Court. In their 3:12-CV-1450 Complaint, Bianca Bucano and Melissa Bucano alleged an Eighth Amendment conditions of confinement claim, a Fourteenth Amendment equal protection claim, an Eighth Amendment denial of medical care claim, a First Amendment right to exercise religion claim, and a First Amendment retaliation claim. On June 6, 2013, this Court dismissed without prejudice Bianca Bucano's claims. The Court directed Bianca Bucano as follows:

- "On or before July 8, 2013, Plaintiff Bianca Bucano may file *her own claim*, to be opened as a separate case, against Judge Sibum based on the alleged retaliatory nature of Judge Sibum's direction that Melissa be held on suicide watch and on B Status in G Unit, and failure to follow the Court's directives in this matter will result in dismissal with prejudice of any offending filing in its entirety;

- On or before July 8, 2013, Plaintiff Bianca Bucano may file *a separate* complaint, to be opened as a separate case, raising her own claims that are dismissed without prejudice from the original Complaint filed in Civil Action 3:12-CV-1450 (Doc. 1), and failure to follow the Court's directives in this matter will result in dismissal with prejudice of any offending filing in its entirety." (*See* 3:12-CV-606, Doc. 52 at 2-3).

Bianca Bucano was further directed to raise her own claims and name as defendants the specific individuals responsible for wrongdoing alleged and identifying the harm done by each. Bucano was instructed that the "filing of any complaint with multiple plaintiffs or without

adequately identified defendants/claims will result in dismissal with prejudice." (*See* 12-CV-606, Doc. 51 at 15).

In accordance with this Court's Order, Bianca Bucano filed this instant case, 13-CV-1782, on June 26, 2013, raising claims that were raised in Civil Action 3:12-CV-1450. (Bianca Bucano also filed, as a separate case, claims against Judge Sibum, docketed to Case No. 13-CV-1793.) On August 14, 2013, Defendants Asure, Diliberto, Jackson, Kramer, Viola, and Monroe County Correctional Facility filed a motion to dismiss for failure to state a claim (Doc. 17) and an accompanying brief in support. (Doc. 18). On September 9, 2013, Bucano filed a motion to amend the complaint to add additional information, construed as a motion to amend/correct the complaint. (Doc. 21). On September 30, 2013, Bucano filed a response to Defendants' motion to dismiss, construed as a brief in opposition. (Doc. 24).[2] No reply brief was filed by Defendants.

## II.   FACTUAL BACKGROUND

Bianca Bucano was formerly incarcerated at the Monroe County Correctional Facility (MCCF) in Stroudsburg, Pennsylvania. She brings various constitutional claims related to her time while at MCCF. In the current complaint, Bucano alleges Eighth Amendment conditions of confinement claims, an Eighth Amendment denial of medical care claim, a First

---

[2] In her brief in opposition, Bucano raises a number of issues that are outside the scope of her original complaint. A plaintiff cannot bring new claims up in a brief in opposition. Because Bucano did not raise any of these new claims in her original complaint, she is precluded from raising them in her brief in opposition. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pennsylvania ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).

Amendment right to exercise religion claim, and claims based on harassing and threatening language. Bucano admittedly did not filed grievances at MCCF regarding these claims and has not exhausted her administrative remedies. Bucano states that when she asked Defendant Diliberto for a grievance form, he refused to give her a grievance form. (Doc. 1).

Regarding her conditions of confinement claims under the Eighth Amendment, Bucano alleges that she was forced to eat non-kosher, water-saturated food on cracked food trays and that Defendant Best, who handles food at MCCF, was aware of the situation and continued giving Bucano inedible food. (Doc. 1). Defendant Best is an employee of Trinity Food Service, a company that provides food service to MCCF. (Doc. 18 at 4). Bucano states that Defendant Best knew that Bucano was Jewish and had kosher dietary needs and sent food on cracked trays saturated in water with cracked hard-boiled eggs every morning, crushed crackers, moldy bread and mold growth on the jelly packets. She said that she lost over 50 pounds while she was at MCCF.

Additionally, Bucano avers that Defendant Viola harassed her by removing her from a two person cell "after she added a boat obstructing an area" for Bucano to get to the toilet. Defendants believe that Bucano's reference to a "boat" is a support structure for a bed. (Doc. 18 at 10). Bucano states that Defendants Viola and Kramer forced her to sleep on a cot for intake inmates, even though she was in the general population, for three weeks outside of a cell despite requests to be placed back in a cell, alleging she was "crammed into a space unsuitable for (her) condition and that there was constant discrimination and prejudice from the C.O.'s, Kitchen Supervisors, Sgt's and Warden." (Doc. 1). Bucano states that her cot was placed farther away from the toilet which caused her anguish, humiliation and pain for over three weeks. Bucano

states she asked Defendant Warden Asure to place her in a cell but that Asure denied her request even though Bucano had injured her leg and had difficulty waiting for one toilet that was used by more than 12 intake inmates.

With regard to her Eighth Amendment denial of medical care claim, Bucano alleges that Defendants Jackson and Viola refused to allow her medical attention for her leg when she hit it falling over the "boat."

With regard to her First Amendment right to religion claim and verbal harassment claim, Bucano states that Defendant Viola called her derogatory names that were derogatory to her Jewish faith. Further she alleges that Defendant Best knew that she followed a kosher diet. Lastly, Bucano states that Defendant Kramer told Bucano that if she complained then she would be "put in the hole."

III. **DISCUSSION**

    A. LEGAL STANDARD

Defendants have filed a motion to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of

pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. A complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. These heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. *Hakeem v. Fisher*, 2010 WL 5463325, at *5 (M.D. Pa. Dec. 1, 2010) *report and recommendation adopted*, 2010 WL 5463134 (M.D. Pa. Dec. 29, 2010).

Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In reviewing a motion to dismiss, a court may consider matters of public record. *See Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

B. MOTION TO AMEND/CORRECT ADD ADDITIONAL INFORMATION

On September 9, 2013, Bucano filed a Motion to Amend/Correct. (Doc. 21). Bucano did not include a proposed amended pleading, as required by Local Rule 15.1, Amended Pleadings. Further, this Court stated in its June 6, 2013 Order that no amendments would be allowed. Thus, it is recommended that this Motion to Amend/Correct be denied with prejudice for failure to comply with Local Rule 15.1(a) and this Court's June 6, 2013 Order.

Alternatively, to the extent that this Court construes Bucano's Motion as a request to add additional information, it is recommended that the Court deny this motion as the information is either beyond the scope of the directives of this Court's June 6, 2013 Order, moot

for purposes of the present complaint, or the addition of such information would be futile. Specifically, Bucano wishes to add: (1) claims for damages, specifically compensatory, punitive, and pain and suffering damages in the amount of two millions dollars; (2) a request for a transfer to SCI-Muncy; (3) criminal charges against Defendants; (4) "Prime Care" as Defendant; (5) additional facts against Defendant Best; and (6) claims relating to a conspiracy between Judge Sibum, Warden Asure, and Melissa Bucano's former attorney, Michael Ventrella.

First, with regard to adding claims for damages, the Court liberally construes the complaint and analyzes whether the plaintiff has stated a claim for relief. The Court applies the relevant legal principles even when the complaint has failed to mention it by name. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). Thus, failing to specify an amount of monetary damages will not be futile to whether plaintiff has stated a claim for relief. Second, Bucano requests that she be transferred to SCI-Muncy. Bucano is currently incarcerated at SCI-Muncy, and thus this request is moot. Third, it is within the discretion of the Commonwealth of Pennsylvania, through prosecutorial discretion, and not the Court, whether criminal charges shall be brought against a defendant. Fourth, Bucano wishes to bring forth a claim against Prime Care for refusing to provide Bucano with the non-generic form Synthroid for her hypothyroidism despite Bucano's insistence that her physician outside of the prison has prescribed the non-generic form for over twenty (20) years due to side effects Bucano had with the generic form. The Court finds that adding Prime Care as a defendant would be futile, for the reasons stated below. Fifth, Bucano wishes to add that Defendant Best "continually sent rotten food, water saturated food, no food, in retaliation of our complaints of kosher being violated."

Bucano has already alleged these facts in her complaint (Doc. 1), and thus this addition is cumulative and does not warrant amending the complaint. Finally, regarding Bucano's request to add information concerning Judge Sibum, this Court has already directed Bucano to file such claims in a separate case.

    a. Prime Care as Defendant

Bucano wishes to amend her complaint to add Prime Care as a defendant – a defendant originally named in her 3:12-CV-1450 action but omitted from the present action. Because the Court finds that amending the complaint to add this defendant would be futile, it is recommended that the Court deny Bucano's motion to amend/correct because Prime Care would be subsequently dismissed under this Court's screening power, pursuant to 28 U.S.C. § 1915(e)(2).[3]

Prime Care allegedly refused to provide Bucano with the non-generic form of Synthroid for her hypothyroidism despite her insistence that her physician outside of the prison had prescribed the non-generic form for over twenty (20) years due to side effects Bucano had with the generic form. (3:12–CV–1450, Doc. 1 at 4–5). Bucano also claims that Prime Care failed to provide adequate prescription drug treatment for her fibromyalgia, back problems, diabetes, and digestive issues. (3:12–CV–1450, Doc. 1 at 2, 4–5). *See Bucano v. Sibum*, 3:12-CV-606, 2013 WL 2456009, at *24 (M.D. Pa. June 6, 2013).

---

[3] The court has authority to "dismiss the case at any time if the court determines that ... the action ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Prime Care is not considered a "person" subject to suit under 42 U.S.C. § 1983, and, therefore, is not a proper defendant. A prison's medical department may not be sued under § 1983. *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973); *see also Stanley v. Delaware County Prison Medical Dept.*, 1991 WL 29928, at *1 (E.D. Pa. Feb. 27, 1991) (prison medical department clearly not a person for purposes of § 1983). Therefore, Prime Care is not an appropriate defendant because it is the prison's medical department and not subject to suit under federal civil rights laws. Thus, the Court finds that it would be futile to allow Bucano leave to amend her complaint to add Prime Care as a defendant.

C. GRIEVANCE PROCEDURE

The Prison Litigation Reform Act (PLRA) prohibits an inmate from bringing a civil rights action alleging wrongdoing by prison officials until the inmate has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion may be excused in certain circumstances, including where the grievance process is deemed unavailable because prison officials have precluded an inmate from exhausting prison grievances. *See*, *e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003); *see also Rister v. Lamas*, 2011 WL 2471486, at *3 (M.D. Pa. June 21, 2011) (listing cases). Thus, the Court does not dismiss the following claims on exhaustion grounds because Bucano alleges that prison officials denied her requests for grievance forms and failure to exhaust is excused. *See Bucano v. Sibum*, 3:12-CV-606, 2013 WL 2456009, at *5 n.3 (M.D. Pa. June 6, 2013).

To the extent that Bucano seeks to bring an action against Defendant Diliberto for failure to provide a grievance form, the failure of a prison official to process a grievance does not violate a constitutional right because there is no constitutional right to an effective prison

grievance procedure. *Burnside v. Moser,* 138 Fed. Appx. 414, 415-16 (3d Cir. 2005) (failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation). Thus, it is recommended that the Court grant Defendants' motion to dismiss Defendant Diliberto.

D. CLAIMS AGAINST DEFENDANT MCCF

A prison or correctional facility is not a "person" that is subject to suit under § 1983. *Ayers v. Bradford County,* 2009 WL 801867, at *5 (M.D. Pa. Mar. 25, 2009) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989); *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)). *See also Slagle v. County of Clarion,* 435 F.3d 262, 264 n.3 (3d Cir. 2006) (it is well established in the Third Circuit that a prison is not a "person" subject to suit under federal civil rights laws). Thus, it is recommended that Defendant Monroe County Correctional Facility be dismissed with prejudice from this action. [4]

E. EIGHTH AMENDMENT CONDITIONS OF CONFINEMENT

Bucano raises conditions of confinement claims under the Eighth Amendment based on the following allegations: (1) Defendant Best knew Bucano kept a kosher diet and gave Bucano

---

[4] In her brief in opposition, Bucano argues that she would like to substitute Defendant MCCF for a new defendant, Monroe County. A plaintiff cannot bring new claims up in a brief in opposition. *Commonwealth of Pennsylvania ex. rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Further, the Court finds that Bucano has not stated a constitutional claim against Monroe County under *Monell v. Department of Social Servs.,* 436 U.S. 658, 691 (1978). Monroe County cannot be held liable for the conduct of persons it supervises pursuant to respondeat superior. *Meyers v. Schuylkill Co. Prison,* 2006 WL 559467, *9 (M.D. Pa. Mar. 7, 2006). Rather, Monroe County "is subject to liability [in a § 1983 action] to the extent it maintains an unconstitutional custom or policy that caused the alleged constitutional violation." *Meyers v. Schuylkill Co. Prison,* 2006 WL 559467, *9 (M.D. Pa. Mar. 7, 2006). In this case, there are no allegations of an unconstitutional custom or policy.

food on cracked trays, saturated in water, with moldy bread despite Bucano's repeated requests for edible, kosher food; and (2) Defendants Viola and Kramer forced Bucano to sleep on a cot for three weeks in an area for "intake inmates" outside of a cell and Defendant Asure denied her requests to be placed back in a cell. (Doc. 1).

"The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air." *Caldwell v. Luzerne County Corrections Facility Management Employees*, 732 F.Supp.2d 458, 470 (M.D. Pa. 2010) (citing *Helling v. McKinney,* 509 U.S. 25, 32 (1993)). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Tillery v. Owens,* 719 F. Supp. 1256, 1261 (W.D. Pa. 1989) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

To establish an Eighth Amendment conditions of confinement claim, a plaintiff must show that she was deprived of "the minimal civilized measure of life's necessities." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992). The plaintiff must prove that (1) the deprivation was sufficiently serious; and (2) the prison official acted with deliberate indifference in subjecting her to that deprivation. *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

    a. <u>Claim based on inadequate food.</u>

In this case, Bucano has not properly stated a cognizable claim under the Eighth Amendment. Bucano has properly alleged the first prong of a conditions of confinement claim because she states she was forced to eat water-saturated and moldy food which the Court finds is a deprivation of the minimal civilized measure of life's necessity of food. *See Bucano v. Sibum*, 3:12-CV-606, 2013 WL 2456009, at *31 (M.D. Pa. June 6, 2013). However, Bucano has failed to properly allege the second prong of a conditions of confinement claim because she has not provided facts that tend to prove that any of the Defendants knew of a substantial risk of harm to Bucano. Thus, Bucano has failed to state a claim for a violation of her Eighth Amendment rights based on a failure to provide adequate food.

    b. <u>Claim based on cot.</u>

Bucano states that Defendants Viola and Kramer placed her on a cot for "intake inmates" even though she was in the general population. She states Defendant Asure denied her requests to be placed back in a cell. Due to being placed on this cot, Bucano states she suffered for over three weeks because she was farther from a toilet and had to share the toilet with twelve other inmates in the intake unit.

An inmate has no constitutional right to be housed in any particular prison, in any specific security classification, or in any particular housing assignment. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Overly v. Garmen*, 2012 WL 1635099, at *3 (M.D. Pa. May 9, 2012). Further, restrictions on toilet facilities, while they may be uncomfortable, may not rise to a

13

constitutional claim. *Locke v. Sobina*, 2011 WL 841368, at *6 (W.D. Pa. Mar. 8, 2011). In this case, Bucano does not allege that she was prohibited from using a toilet; rather she states that the location was inconvenient and it was a shared facility. These allegations do not rise to a constitutional violation. Thus, on the basis that Bucano was moved to a cot which was farther away from a toilet than it would have been in a cell, Bucano has failed to allege facts sufficient to state a claim for a conditions of confinement claim based on the Eighth Amendment.

This complaint was filed as an opportunity for Bucano to amend her previously dismissed claims based on the same facts. Because she has failed to allege facts sufficient to state a claim for a second time, it is now recommended that Bucano's Eighth Amendment conditions of confinement claims be dismissed with prejudice.

### F. EIGHTH AMENDMENT DENIAL OF MEDICAL CARE CLAIMS AGAINST JACKSON AND VIOLA

Bucano states that Defendants Jackson and Viola refused to allow medical attention for her leg when she hit and fell over the "boat." According to Defendants, they believe that Bucano's reference to a "boat" is a support structure for a bed. (Doc. 18 at 10).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 103–04 (1976). Such a claim requires that a plaintiff allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). "Mere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner ... do not constitute deliberate indifference to serious medical needs." *Lopez v. Correctional Medical Services, Inc.*, 499 Fed. Appx. 142, 146 (3d Cir. 2012) (citing *Spruill v. Gillis,* 372 F.3d 218, 235

(3d Cir. 2004)). Instead, it must be shown that an official knowingly disregarded an excessive medical risk: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Deliberate indifference may be manifested by an intentional refusal to provide medical care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury." *Beckett v. Department of Corrections.*, 2011 WL 4830787, at * 11 (M.D. Pa. Oct. 12, 2011). Furthermore, a serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a lay person would easily recognize the need for a doctor's attention. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Bucano has failed to allege an Eighth Amendment denial of medical care claim because Bucano has not alleged facts sufficient to show that either Jackson or Viola acted with deliberate indifference or that Bucano had a serious medical need. The complaint merely states Defendants Jackson and Viola "refused to allow medical attention for my leg when I hit it falling over the 'boat.'" The complaint does not state what specific treatment was requested, what treatment, if any, was denied, whether Bucano experienced any pain, whether the alleged pain was severe, or whether the prison officials knew about the pain and denied her treatment. *See, e.g., Mimms v. U.N.I.C.O.R.*, 386 Fed. Appx. 32, 35 (3d Cir. 2010). Since this claim was previously dismissed without prejudice, it is now recommended that this claim be dismissed with prejudice.

G. FIRST AMENDMENT RIGHT TO EXERCISE RELIGION

With regards to the First Amendment right to exercise religion claim, Bucano alleges that Defendant Best forced her to eat food that was not kosher, and that Defendant Viola called her names concerning her Jewish faith. (Doc. 1).

Once a sincerely held religious belief has been demonstrated, an inmate may show that a prison regulation or practice violates the right to free exercise of religion by showing that it does not pass the "reasonableness test" set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), and *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). This test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 415–18 (1989). However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, *Thornburgh*, 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a prison regulation or practice. *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (citing *Overton v. Bazzetta*, 539 U.S. 126 (2003)).

In this case, the Court has already stated that Bucano has demonstrated a sincerely held religious belief of Judaism. *See Bucano v. Sibum*, 3:12-CV-606, 2013 WL 2456009, at *37 (M.D. Pa. June 6, 2013). However, Bucano has failed to allege that the prison has a regulation or practice in place that violates her right to freely exercise their religion. Therefore, because

16

Bucano has not alleged that the prison has a regulation or practice that would infringe on her right to practice Judaism, it is unnecessary to delve into the aforementioned "reasonableness test" set forth in *Turner v. Safley*. Thus, it is recommended that this court grant Defendants' motion to dismiss with prejudice as to this claim.

### H. Verbal Harassment

Bucano alleges that Defendant Kramer told her that if she kept complaining she would be "put in the hole" and that Defendant Viola called her names concerning her Jewish faith. (Doc. 1).

Verbal harassment or threats, without some reinforcing act accompanying them, do not state a constitutional claim. *Robinson v. Taylor*, 204 Fed. Appx. 155, 156 (3d Cir. 2006); *Brown v. James*, 2009 WL 790124, at *6-7 (M.D. Pa. Mar. 18, 2009). *See also* Maclean v. Secor, 876 F.Supp. 695, 698–99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F.Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."). Moreover, religious and racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983. *Matthews v. Beard*, 2013 WL 1291288 (W.D. Pa. Mar. 27, 2013). *See also* DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution.").

As such, Defendants' verbal harassment does not give rise to a constitutional claim. To the extent Bucano brings claims against Defendants Kramer and Viola for using threatening and harassing language, it is recommended that these claims be dismissed with prejudice.

17

IV. **RECOMMENDATION**

Based on the foregoing, it is recommended that:

1. The Court **GRANT** Defendants' Motion to Dismiss (Doc. 17) with prejudice, and dismiss Defendants Monroe County Correctional Facility, Officer Viola, Sergeant Kramer, Sergeant Diliberto, Warden Asure, and Officer Jackson from this action;

2. The Court dismiss Defendant Best pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and

3. The Court **DENY** Plaintiff's Motion to Amend/Correct the complaint. (Doc. 21).

BY THE COURT:

Dated: January 7, 2014

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

18

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIANCA BUCANO,<br><br>                 Plaintiff<br><br>    v.<br><br>MONROE COUNTY CORRECTIONAL FACILITY, et al.,<br><br>                 Defendants | CIVIL ACTION NO. 3:13-CV-01782<br><br>(CONABOY, J.)<br>(MEHALCHICK, M.J.) |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **January 7, 2014**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: January 7, 2014                                               *s/ Karoline Mehalchick*
                                                                                         **KAROLINE MEHALCHICK**
                                                                                            **United States Magistrate Judge**